All right, this is the court's last case for the day. Indeed, it is three different cases consolidated. The case numbers are 413, 1022, 1023, and 1024. It's the Department of Central Management Services, et al., and the Illinois Labor Relations Board, and ask me for the appellate, Mr. Weiner, for the appellee, Gail Marzowski. Mr. Weiner. May it please the court. Again, it's always a pleasure to be here in your beautiful courtroom. It's a privilege, actually, to be here also before this court. In making this argument, I'm reminded of a case where I was here four years ago, and I was opposing Ms. Marzowski's partner, Jacob Pomerantz, a very distinguished attorney and good friend. And there was a colloquy that occurred, and it was noted by this court in an epilogue in Case 2011-IL-F4-090966. And in that epilogue, the court noted that in closing, an oral argument in this case, we inquired into which of the tens of thousands of state executive branch employees would be excluded from collective bargaining under the Act. ASME's counsel responded that ASME believed that perhaps, quote, the governor and his policy team, close quote, would not be included because they report directly to the citizenry, but that most everyone else's could be included. ASME's position is instructive because it demonstrates that ASME views the board's interpretation of the Act the same way we do, extraordinarily broad. Unlike ASME, however, we do not believe that the General Assembly intended such a broad construction. Had that been the General Assembly's intention, it would simply have excluded the governor and his policy team rather than excluding all managerial, confidential, and supervisory employees. What's interesting about the epilogue is that because of the situation, not because of the epilogue, but because of the situation described in the epilogue, the numbers of the state employees that became unionized were about 90 – I think it was close to 98 percent at one time, about 52,000 employees of the 55,000 at the time. As a consequence of that, though, was an Act passed, and it was called the Management Bill or the Management Act. And it is that which allowed the governor to designate approximately, well, 3,000, somewhere close to 4,000 employees to be excluded from collective bargaining, from unionization, in order to run the state. In order to have people who could manage, who could supervise, who could be confidential employees in that state that were not being unionized. And that's the very bill we're talking about right now, and particularly Section 6.1A of that Act, which allows the governor, authorizes the governor, to designate positions collectively within, quote, state agencies directly responsible to the governor, close quote. And it is that phrase, that phrase, that is at issue in this case. That's what we're talking about primarily. But the union used that language, that phrase, rather narrowly, rather myopically, whereas the state respectfully contends, and as the dissent in the case, this was a three to two decision in this case, respectfully contends, that that phrase must be construed in accordance with traditional rules of statutory construction. That phrase must be construed in peri materia with all of the amendments, not only the amendments, but other provisions of the Illinois Public Labor Relations Act. So in construing those, and as the dissent knows, in construing Section 6.1A with Section 6.1B, C, and D, which relates to state agencies, and in construing it with respect to and considering Sections 3.1, I-5, 3.J, managerial, 3-N, public employee, 3-R, supervisor, and most particularly in construing it in connection with Section 3.2-5, which states that a state agency means an agency directly responsible to the governor, as defined in Section 3.1 of the Executive Reorganization Implementation Act, and the Illinois Commerce Commission, the Illinois Workers' Compensation Commission, the Civil Service Commission, the Pollution Control Board, the Illinois Racing Board, and the Department of State Police Merit Board. Now, before you, in this case, were dealing with the Pollution Control Board, and this was the first case decided by the Illinois Labor Relations Board with respect to this matter. Again, 3-2 decision. I'll get to the dissent in a moment. But more importantly, following the decision in this case, there were six other cases. In all those cases, by varying majorities, going from 3-2 in ruling in favor of the state to 4-1 in ruling in favor of the state, there were six successive cases, all of which- Well, it matters to you for several reasons. I thank you for asking the question. The first reason is because when this court, we contend that this court, if there is, if it determines there's an ambiguity and doesn't apply the clear and unequivocal- Well, I've looked at the briefs. I don't see where anybody has argued that the statute is ambiguous. Well, we argue that in our brief. That it's unambiguous or ambiguous, Your Honor? My understanding from reading the briefs is that neither party has argued that the statute is ambiguous. Respectfully, Your Honor, I believe in the last section of our brief, before the oral arguments, we allege that the language viewed in paren materia with all of the other provisions of the amendments and the Act should determine that these affected agencies are properly designated, positions within them are properly designated. I'll take a look at the last section of your brief. The one that dealt with the substance, rather than the motion to reconsider and the motion for a failure to give us an oral hearing. The second reason for that is that, going to Your Honor's question about ambiguity, if the court finds that there's an ambiguity, and I think that that is probably a more relevant question for the court to address, then those cases, you would defer, naturally, to the labor board's determinations of its own jurisdiction and its own interpretation under the statute. Now, in deferring, though, what I understand the rule of statutory construction is, in deferring to decisions involving the precise same question by the precise same agency, this court should defer to the most recent case. And in this case, the most recent six cases, because all the six cases deal with the Illinois Pollution Control Board. This case deals with the Pollution Control Board, the Illinois Commerce Commission, and the Illinois Workers' Compensation Commission. So the subsequent cases of which this court has the total authority and should take judicial notice of, either the case and or the evidence set forth in the case, but the most recent six cases are saying the governor has that authority to designate positions before the affected agencies, including the Illinois Pollution Control Board. So that's why the subsequent cases are not only important, I think they're determinative in this case. And I think this court should take judicial notice for a number of reasons, one of which, this case, there was no oral hearing provided. There was an opportunity for argument, but no oral hearing. And I mean oral hearing as defined by Justice Appleton in the Illinois Commerce Commission case at 406 Illinois Ave. 3rd, where Justice Appleton and this court held that basically an oral hearing is an evidentiary hearing. Here there was just an opportunity, and over just a few days, I might add, to present oral argument, which was done. But in this case, there was no oral hearing provided. In the next case, which we cite, there was an oral hearing provided, and the ILRB itself said, we're revisiting this situation because we didn't provide an oral hearing. And then they heard evidence, extrinsic evidence, as to the legislative history regarding the amendments. Counsel, they don't have to allow an oral hearing, is that correct? No, I believe they do have to allow oral hearing if, there's two points on the oral hearing. One is, the rule itself, the rule itself, the ILRB rule, under its official rules and regulations, says that there might, to use that word, might be an issue, question of law or fact, that they must provide a hearing. They must provide a hearing. Also, under Section 6C of the Act, I'm sorry, 6B of the Act, the state is entitled to due process. And we would contend that they should have been given what this court has defined. This court defined what oral hearing meant. This court, they should be afforded under due process. This court ruled that constitutionally, the state doesn't have a right to due process. But it said it had to follow its own rules in the ICC case. In this case, the rules say, if there's that question, they have to give you a hearing. There's no, that's under the rule. And while we're saying, as Justice Appleton said in the ICC case, you've got to abide by your own rules. Here again, the ILRB has not abided by its own rules in affording the hearing. An oral hearing, not an oral argument, as they do. And as I say, we have now a statutory right to due process. We have no constitutional right to due process. And in providing the state due process under the statute, we believe that a hearing was required in these circumstances and not afforded to the state. Counsel, under 6.1, it's indisputable that the language is, state agency is directly responsible to the government. Right? Of course. Yes, Your Honor. Okay. Why, under your argument, aren't you reading out the words directly responsible to the government? I'm not reading out those words at all, Your Honor. In fact, I'm not. Well, you're going to have to explain to me why you're not, then. Please. Of course. It's my privilege. As set forth most particularly in the dissent, but I'm going to go into my argument for you on it. First of all, you note that that phrase in Section 6.18 is not defined in Section 6.1. State agency, you know, under 3Q5 of Section 3 of the Act, goes in and says section agency means agency directly responsible to the governor, etc. Don't forget the rest of it. Oh, I don't. And, and, and, right. Okay, well, the agencies following the word and, is there any way to read that other than they're not responsible? Actually, if what, what. To the governor, otherwise why would it be phrased that way? Well, that, that, that the whole, the whole reason I'm, that I'm, the argument is based upon the fact that that and refers to the executive, you know, that they are agencies directly responsible to, to, to the governor. Under, under state agency 3Q-5. Otherwise. I just don't understand how you can say that the way that is written, the way it's structured, that is a reasonable interpretation. Well, because if you take, because otherwise, if you took all the other provisions of the, of the amendments, a lot of them refer to state agencies. But if you, the whole purpose of the Act was to provide the governor with the authority to designate positions to exclude. If you read, if you read Q3Q-5, the way is that these, that doesn't mean that they're agencies directly responsible to it. It, it completely contravenes the whole intention and purpose of the Act. It excludes, even though there's references, there are state agency, there's references to state agency all over the place, including in sections A, B, C, and D. But they'd be excluded from it because, because of that reading of it. In fact, I say the reading, I say the reading, make, if you include them as not, only being state agencies and not state agencies responsible, directly responsible to the governor. Then what you're doing is you're really deleting the, the, these commissions from, from the statute, from, from the reorganization. You wouldn't have to do anything in the reorganizational, because of the statute, the reorganizational statute, it excludes these particular boards and agencies. Well, then why didn't the legislature just do that? Why didn't they? Because these words are here. These words are here. They have to mean something. And they can't mean, if you're interpreting it just logically, you have to, you have to interpret it as these agencies being responsible, directly responsible. That is basically amending or overruling it to the extent it's applicable. I don't, and I don't think the Reorganization Act is applicable at all. That dealt with reorganizations. It didn't, it didn't deal with what we're dealing here. But leaving all that aside, they didn't have to put these words in here. They put these words, these boards in. They put them in there. They had to mean something. They were already state agencies. So there was no dispute there. So there's no reason to put them in to be a state agency. Well, didn't, in this act, didn't they redefine state agencies? Well, no, they didn't redefine state agencies. There was, they added, they added these words. The whole point was that they added these words, adding these boards, or basically amending the Reorganization Act to include within an agency that's directly responsible to the government these agencies. Otherwise, there's no sense in that. It's absurd. It's just an absurd result. As pointed out by the dissent more articulately than I have, and I'd like to refer the court to that dissent, if you don't mind. So the dissent says, under majority's ruling, the governor's authority under Section 6.1A is narrower than the definition of state agency in Section 325. Yet the legislature undoubtedly used the broader term state agency when providing the means for implementing that authority in subsections 6.1B and C. The broader aspect of this language is rendered meaningless under the majority's narrow interpretation of the governor's authority. And they go on to an explanation, I don't, in less than two minutes, to rely upon their explanation as to what they're saying is why section, that the definition of state agency found in Section 325 must be applied to Section 6.1. But they're saying that the majority's interpretation renders meaningless the definition of state agency, or at least meaningless as the definitions applied to Section 6.1. And that's the point. They added it in. And if you consider the legislative history, it was added in by a draft, changes being made, which is not the horse of the record in this case, but which is involved, which was adduced at the hearing in the second case. That's why I say it's so important to take judicial notice of both the decision and the evidence adduced. I'll rely upon the rest of my time. Okay. Thank you, Your Honor. We're just about out of time, but you will have rebuttal anyway. I understand. Thank you so much. May it please the Court, just to be clear, I'm here for the appellee absent. Pretty sure you all knew that, but anyway. We agree, ask me please, with this decision. Wholeheartedly. Because the Board found that the language in 6.1 is clear and unambiguous. And therefore, given plain meaning, reasonable reading, unambiguous language, there is no necessity for extrinsic evidence, which sort of goes to the issue of the hearing and do they have to have a hearing when in fact there's nothing to be adduced at a hearing. So, counsel, Mr. Gagliardo, Mr. Weiner's partner, was asked directly at the oral argument in this case, whether or not, what evidence do you have? And I believe he didn't have any to say, and he said, it's probably no harm, no foul. And they're using that here to say, well, this should be overturned because we didn't get a chance to put in evidence that they didn't have to put in in the first place. Right now, although we have two amendments that happen, more than two amendments, but when they did this management bill, and that's what they called it, in order to eliminate certain positions from the union, or from the ability to be in a union, they amended two things. One, they amended the definitions of public employees in several instances, which include the definition of state agency, that was an amendment in its entirety, Q5, to include definitions and use the term state agency for legislative liaisons, for chief information officers, for a variety of other positions within the state government that they decided should be excluded. The legislature, these should be excluded. They also came up with something that is not really consistent with the Act, because the Act is there to permit people who are public employees to exercise their rights to collectively bargain and be represented. Based on a variety of factors, including other cases before this and other courts and the board, there's decisions that have been made that we have to tamp down this number of people in the union. So something extraordinary. We, the legislature, are going to give you, the governor, the authority to, in certain parameters, which we're arguing in a different court, this is not correct, but it's not before you, to go ahead and designate certain positions of employment that should be out of the union in those agencies that are directly responsible to you. Now, the only thing I can say is that all the arguments that have been raised by CMS in these cases are that you should ignore that language. That this is limited to those agencies directly responsible to the governor. And I mean, that makes sense, because if you look at the statute, which is the Executive Reorganization Act, that talks about agencies directly responsible to the governor, lift right out, that's the language in that statute, it says we're going to say these are not directly responsible to the governor because these should be and are intended to be independent. Commissions, boards, things of that nature. The ICC, the Pollution Control Board, the State Police Merit Board, which actually was never an issue here, and the Workers' Comp Commission, you have state employees who have workers' comp claims, you have state and, you know, the ICC is set up by statute to be separate, and they hire their own, the governor doesn't hire them, things of that nature. So, it makes sense. Makes sense. And in fact, something I wish I had actually addressed in my brief, but I didn't, if you look at that list of agencies, with the exception of the Fair Employment Practices Commission, which is no longer in existence, they named in 3Q5, in order to define state agency, all those that are under the governor and, as the court has pointed out, certain agencies that, for the purpose, generally, they're not for the governor, here, in order to, for the act to go forward, where there's going to be a full hearing, where the board is going to, you know, use their normal powers that have been given to them by the legislature and exercised for 30 years, then you use that definition of state agency. But that is not the definition under 6.1, and 6.1 starts out, notwithstanding any other provision of this act, the governor may designate, and those state agencies that are directly responsible to him. It's the union's position that it's very clear language, and using normal rules of statutory construction, which is that the best intent of the legislature is the plain language of the statute, and if it's unambiguous, it needs to be enforced as it's written. It's our position that it's unambiguous and needs to be enforced as it's written, so it does not apply to these 11 positions, in this case, and a very minute number of other positions, because they're not big agencies. I mean, it's not as if the governor wasn't permitted and didn't, in fact, he did, designate out, you know, 33,200 other positions, okay, here, because this is, you're talking about 30 positions altogether, even using all the cases. So, in this case, it seems very rational and reasonable that the legislature would say, you know what, we're going to give this commission, no, I don't really like that employee that you hired, we're going to get rid of them. I'm not saying the governor did or didn't do that, I'm just saying that that makes this rational under the statutory scheme. I would also just note... So did you say a minute ago that there were only 30 employees involved in all litigation that is currently pending pertaining to this new act? Well, let me clarify. Because I think we have, what, 11 here? 11, I think. Let me clarify that just so, you know. The governor could designate 3,580 positions. He did not designate 3,580, but close. With the exception of these, either 11 or 13, every other position that was designated was, in fact, the petition was granted. So it turned out to be approximately 3,300 positions. I happen to have been involved in this, so I know all these. And as it stands, in terms of this issue, so this very narrow issue of these few agencies, there are actually more than six. I mean, there's these three cases which were consolidated to one. There's a next group of three cases that's on appeal in the first district that was altogether that are at issue and at appeal. There were, I believe, four other cases filed, petitions filed in which decisions have been rendered. I'm almost positive that in each of those, it's one employee. Maybe one of them was two or three employees, but generally speaking, one employee. So the number is extremely small in comparison to what the governor's authority is, right? I mean, you know, we're not talking like if you limit his authority to what the statute says, which is what should be happening anyway, you know, somehow it gets rid of this 6.1. I mean, it's literally a handful of people that are because they also had to fit in the other requirements. I mean, it's not just these agencies, but they would also have to fit in the other requirements. So in effect, you know, we're not talking about a lot of people. And we are, we think the statute, the statutory language is unambiguous. We do not believe a hearing was necessary. I think the law is, first of all, I think that the language as to due process is not really for the employee's benefit if they raise an issue. I don't think the state is entitled to due process. But even if it is, there's here, they were given oral argument. They made their arguments. If there was no facts, which is what the board decided, there are no facts that are relevant to this. I mean, under I can't provide a hearing by allowing submissions, arguments. This is a legal case. It's a legal argument. And so I don't believe that there was an error on the part for the board not to provide a hearing in this case. I was going back to the Reorganization Act. When you look at the list of, and I should have said this, all of them that could be listed in that state agency definition for the purposes of the Act in general, so not of 6.1, but for the Act in general, the amendments to the Act to which it applies, are listed with the exception of two. And those two, one, there's another provision of the Act which takes them out of the coverage of the Act, the State Board of Elections. And the second is the State Board of Education, which is covered under the Education Act. So for the purposes of the new provision, 6.1, and limited provision, the legislature did not say, and these other agencies. It just said directly responsible for the bill. The only other thing I want to discuss very briefly is the issue of the other cases. So I have to take issue with counsel's representation that the court can take the administrative agency. I do not believe that the law permits that the court, the administrative review law, take judicial notice of the record in other cases. And I believe the If the court has no questions of me, I believe that I am complete. Counsel did not discuss about the reconsideration, and I think that's covered in our briefs, so I would not First of all, I would like to apologize to the court. I've reviewed the definition of the section regarding state agency charges. I thought there had been a prior provision, and I looked it up during the break, and the court is correct on that. That being said, there's numerous references to state agencies and definitions of being state agencies. And I think that this definition, as I said, for the reasons stated, I believe that it would not be harmoniously construed, if you can take it to the entire picture, as did the dissent in this case, and all the following majority opinions. I beg to differ with counsel on the last statement, that you cannot take judicial notice of proceedings. You can take judicial notice of both of the decisions and the proceedings. I don't believe there are cases that say that you can't do that. We just cited two cases generally. I don't know if they dealt with that specific issue of the proceedings or not. But I believe they said, basically, administrative proceedings you can take by recollection of the cases. We'd have to rely upon what's in our brief in that regard. But you can take judicial notice of the proceedings. You can take judicial notice of the evidence seduced at the proceedings. And I believe you should do so in this case, because that's what the other decisions, the court rendered its decision on that evidence that was not allowed. We were not allowed an evidentiary hearing, and I repeat, counsel and the union conflates what is an oral argument with what is an oral hearing. As to the argument in general, again I refer to the dissent, but I would like to quote particularly from the dissent. To discern how Public Act 97-1172 affected state agencies under the jurisdiction of the governor, we must look to Section 6.1. It is in Section 6.1 that we find the concept of gubernatorial designation a unique statutory creation that differs from any language existing in the act. Instead of being a reference to the ERIA, the Executive Reorganization and Implementation Act, as the majority presumes, we believe that the phrase, quote, within state agencies directly responsible to the governor, close quote, was intended to exclude the other constitutional officers and to indicate that the unique statutory right created by Section 6.1 was only to be utilized by the governor with regard to state agencies. This interpretation were easily harmonized with the entirety of the amendments of Public Act 97-1172. Instead of rendering particular portions meaningless, it is simply illogical to conclude that the management of state agencies, and I quote, quote, to shield ICC, WCC, and PCP from Section 6.1. We see no expression in the legislative debates or elsewhere of a legislative intent to shield positions at these agencies from the effect of Public Act 97-1172. We do not believe that the act should be interpreted in such a way as to lead to absurd results. However, that is exactly what the majority ruling does. The board simply cannot turn a blind eye to the fact that the governor via CMS has been representing the ICC, WCC, and PCP at the bargaining table for decades. The board cannot ignore the fact that employees from the ICC, WCC, and PCP are included in the broad bargaining units containing other agencies directly responsible to the governor, and that this board has certified employees from the ICC, WCC, and PCP as included. Counsel, you're out of time, but the good news is we do have a copy of that dissent in the appendix, and we've looked at it and won't review it again. Thanks to both of you. The case is submitted, and the court stands in recess until further call.